Robert E. **FINGAR**, Petitioner,

v.

UNITED STATES RAILROAD RETIRE-
MENT BOARD, Respondent.

No. 25703.

United States Court of Appeals
Fifth Circuit.

Oct. 23, 1968.

Rehearing Denied Nov. 29, 1968.

Robert E. Fingar, pro se.

Myles F. Gibbons, Gen. Counsel, David M. Goldman, Atty., R. R. Board, Chicago, Ill., for respondent.

Before TUTTLE, COLEMAN and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge.

The appellant brought this proceeding to obtain review of a decision of the Railroad Retirement Board, which sustained a referee's decision denying Mr. Fingar's claim for unemployment benefits under the Railroad Unemployment Insurance Act, 45 U.S.C.A. §§ 351–367.

Section 5(f) of the Railroad Unemployment Insurance Act provides that: "The findings of the [Railroad Retirement] Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." Subject to this limitation Fingar has satisfied the requirements for a review in this court of the action of the Board.

Fingar was a locomotive engineer for the Seaboard Air Line Railroad Company for sixteen years. Following a formal investigation on June 1, 1965, he was discharged for alleged insubordination. The last day he worked for the railroad was May 30, 1965. He applied for unemployment benefits under the Act after his last day of service with the railroad. He registered continuously for benefits on claim forms for fourteen-day registration periods in the overall period June 1, 1965 to December 26, 1967, and was unemployed throughout this period. He was paid benefits at the rate of $102 for each of the fourteen-day registration periods through the one ending with March 21, 1966. These benefits totalled $2142.00. In all periods beginning with March 22, 1966, his claims have been denied on the ground that he did not meet the "available for work" requirement, except the Board determined that by mistake he was paid

benefits amounting to $71.40 in one subsequent registration period.

It is apparent that Mr. Fingar bases his claim exclusively on the fact that he was not required to do anything more than "actively prosecute his claim for reinstatement in his former work," even though such prosecution of his claim, according to his understanding of the requirements of the Seaboard contract under which he was working would permit a period of 36 months to expire, during which he might be required to do nothing more than write one letter to the next higher railroad official.

The Board's regulations issued for the purpose of prescribing the standards for the ascertainment of the question whether an employee "was available for work," (the requirement of the statute), among other things, defined the term "available for work" as comprehending a showing of willingness to work and the making of reasonable efforts to obtain work, "which the employee professes to be willing to accept and perform."

Section 326.15(c) of the regulations, in defining "what constitutes reasonable efforts," provides that "claimant shall be considered as making reasonable efforts to obtain work when he takes such steps toward obtaining work as are appropriate to the circumstances. In determining what steps are appropriate to a claimant's circumstances, *consideration shall be given* to actions such as: * * (5) actively prosecuting his claim for reinstatement in his former work." [1] (Emphasis added.)

Here Fingar had filed his grievance with the railroad, which, at the first step was unproductive of any response. He took the position that he could take his case to the railroad's chief operating of-

ficer if he didn't get a decision from the division superintendent within eighteen months, but that he had the right to await the eighteen months expiration before doing anything under the circumstances, and he further claimed that after still another eighteen months, if he hadn't received a decision from the chief operating officer, he could take his case to the National Railroad Adjustment Board. He told the interviewer for the Board that he was not seeking other work as he was planning to handle his claim for reinstatement to a conclusion.

Following a hearing held on May 17, 1967, after the district office had declined to make further payments based upon this information, the hearing was held by a referee, at which time Fingar repeated his position that his dispute had progressed to the railroad's director of personnel, recognized for the purpose of the Act as the railroad's chief operating officer, on March 27, 1967, that he had thereafter received no information from the director of personnel and had received no decision on his appeal. He took the position that he could wait for eighteen months before taking the matter further to the National Railroad Adjustment Board. At this hearing Fingar stated his position by saying, "I have met the criteria, showing that I am available, by actively prosecuting my claim for reinstatement in my former work * * * and I know of no other reasonable action to take." He also stated that he was not interested in any other job except his last railroad job. The referee found that there were ample working opportunities in the area of Jacksonville, Florida, where Mr. Fingar lived, suitable to his abilities and skills. The referee decided that Fingar was not actively prosecuting his claim for rein-

---

[1] There are six items which are referred to in this paragraph. The others are as follows:
    (1) Registering with a union hiring or placement facility.
    (2) Applying for employment with former employers;
    (3) Making application with employers including individuals and companies not covered by the act, who may reasonably be expected to have openings in work suitable for him;
    (4) Responding to appropriate 'want ads' for work which appears suitable for him;
    *     *     *     *     *
    (6) Any other action reasonably directed toward obtaining work.

statement, and was not otherwise making reasonable efforts to get work, and, therefore, was not available for work under the terms of the statute. The Board's district office in Jacksonsville subsequently instructed Mr. Fingar to report to the Florida State Employment Service Office in Jacksonville for a possible job referral, and he reported as directed on June 20, 1967. The State Employment Service Office subsequently reported to the Board's district office that on June 20, 1967, it referred Fingar to the Link-Belt Company for a permanent job as order clerk with a starting salary of $80 per week, but that he failed to apply to the employer for the job.

Based on the entire record, the Board considered Fingar's appeal, and on October 23, 1967, rendered its decision sustaining the determination by the referee.

In his appeal here, Fingar points to the case of Ezra A. Jones v. Central of Georgia Railway Company, decided by the National Railroad Adjustment Board, 1st Division. The Board seeks to distinguish the Jones case by reason of the fact that it involved a different railroad, a different craft and a different contract, including the provision that the carrier must give notice of disallowance within 60 days of the filing of a grievance, and that if such notice is not given, "the claim or grievance shall be considered valid and settled accordingly." In the contract under which Fingar was working for the Seaboard Air Line Railroad Company, Article 32 provides that the grievance shall be set out in writing to the superintendent within 45 days after its occurrence, and that the engineer shall have the right to appeal to the next ranking officer, provided such an appeal be made in writing within 45 days after the superintendent has rendered his decision to the engineer or the engineer's local committee. The contract is silent with respect to what results from a failure of the superintendent to make a decision either of granting or

denying the grievance, or what results from the railroad's simply placing the claim in the files without any disposition being made of it, as was done here.

■ We can find no justification for overruling the determination by the Board and its referee that Fingar's claim that he could wait eighteen months after filing his grievance, and then when the railroad failed to act, simply write a letter to the railroad's chief operating officer, and then await his determination for an additional period of eighteen months did not satisfy the requirements of the act that he "be available for work."

■ This is true because, even if Fingar had, contrary to this determination of the Board, been actively pursuing his grievance, the Regulations make it plain that the actively pursuing of a grievance is only one of several circumstances that the Board is to take into consideration in determining whether an engineer or other employee is "available for work." The statute authorizes the adoption of the regulations, which were properly adopted and are in force (20 C.F.R. 327.1–327.15), and it is clear that under them it is not within the province of the court to disregard the findings of the Board even though we were to determine that Fingar's idea of what amounted to "actively pursuing" his grievance was warranted, because there were ample facts to support the Board's ultimate determination that he was not "available for work." The statute requires, and this court has long since held, that a decision of the Board should not be set aside on judicial review if it is supported by substantial evidence in the record, and was not based on an error of law. Ladish v. Railroad Retirement Board, 339 F.2d 590 (5 Cir., 1964); Squires v. Railroad Retirement Board, 161 F.2d 182 (5 Cir., 1947).

We conclude that the petition for review must be denied, and that the Board's determination must be affirmed.

Petition denied.