Square COBB, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

No. 29429

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1970.

Square Cobb, pro se.

Myles F. Gibbons, Gen. Counsel, David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, for respondent; Louis Turner, David M. Goldman, Railroad Retirement Board, Chicago, Ill., of counsel.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Mr. Square Cobb was a train switchman, working for the Southern Railway. On April 18, 1969, Cobb failed to show up for work and has not appeared at work since then. It is not completely

* ▪ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir., 1970, 431 F. 2d 409, Part I.

clear from the record why Cobb failed to return to work after that date. He claimed that he had been "discharged" and he successfully received unemployment benefits on this basis until August 5, 1969.[1] The reasons for his absence from work before August 5 do not concern us here. After that date, however, his unemployment benefits were terminated, and that termination is the cause for his appeal to this Court.[2]

Some background information on the events leading up to the August 5 termination is necessary. Soon after Cobb failed to appear at work on April 18, he began to reap the consequences of his absence. On April 28, the Superintendent of Terminals notified Cobb that he had forfeited his seniority because he had laid off without proper leave for more than thirty consecutive days.[3] Upon receipt of this notice, Cobb filed a claim through his union representative for reinstatement with seniority restored and with pay for time lost. On June 25, 1969, the Superintendent of the Railway responded to Cobb's claim by reversing the original decision to terminate his seniority, and by denying the claim for back pay. The Superintendent also notified Cobb at this time that Cobb's services were needed at the yard and that he should "mark up" for duty immediately. Because of the denial of his claim for pay for time lost, however, Cobb decided that he would appeal the Superintendent's decision and he therefore refused to return to work pending further consideration of his claim.

The case of Square Cobb remained in this posture until July 31, 1969, when the Superintendent notified Cobb by letter that he was laying off without any good reason because he could return to work without any prejudice to his claim for pay for time lost, and that if he failed to return to work by August 5, 1969 he would forfeit his seniority and his employment relationship would be terminated. Cobb continued to stay away, however, and predictably his name was removed from the seniority list on August 5. At the same time, his unemployment benefits, which he had been receiving since April 22, 1969, were terminated by the Railroad Retirement Board. The Board determined that Cobb's repudiation of the Railway's offer to return to work was a "voluntary quit" and that he could therefore no longer rely on the continued prosecution of his claim against the Railway for reinstatement as a basis for eligibility for benefits. The Board further determined that since Cobb had voluntarily quit his job, he must show good faith efforts to obtain work elsewhere in order to maintain his eligibility for benefits. The Board reviewed Cobb's job-seeking efforts and determined that they were inadequate.

On his pro se appeal to this Court, Cobb has interspersed arguments in support of his claim against the Railway throughout his arguments on the merits of his appeal from the decision of the Railroad Retirement Board. It should be made absolutely clear at this

---

1. The exact date on which benefits were terminated is unclear from the record. Three dates appear: July 28, 1969; July 29, 1969; and August 5, 1969. Since none of these dates is material to our determination, we have decided to use August 5 to simplify our presentation of the facts.

2. This appeal arises under the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351–367. Section 355(f) of that Act confers on this Court jurisdiction to review decisions of the Railroad Retirement Board.

3. Obviously, there are not thirty days between April 18 and April 28. This may have been the reason for the subsequent reversal of the Terminal Superintendent's decision, *infra*. It appears from the record that the Terminal Superintendent was relying on February 10, 1969, as the last day Cobb appeared at work. This was the last day he worked as a yard switchman, but he worked off and on as a road switchman until April 18, 1969.

point that we are not here concerned with the merits of Cobb's claim against Southern Railway. Our problem is whether Cobb may properly claim unemployment benefits while he is, in effect, boycotting his employer for failure to consider a grievance. We believe that the Railroad Retirement Board is correct in concluding on these facts that he may not, and we therefore affirm.

It is apparent to us from Square Cobb's brief that he has kept abreast of the rules and regulations that affect him in this case. His interpretation of those rules and the letters he has received, however, is strained beyond reason. He argues that he should not have been expected to look for work in order to be considered "available for work" and eligible for benefits because "if a man's case is pending to get back to work, they don't require him to look for work." The Railroad Retirement Board observed this principle as long as it was convinced that Cobb was prosecuting his appeal for reinstatement in good faith. When the Board discovered, however, that Cobb had been notified that his seniority had been restored and that he was needed on the job, it determined that Cobb was no longer involuntarily unemployed. This determination was further supported by notice from the union representative handling Cobb's case that the union had refused to handle the appeal on the question of seniority any longer because it was a "dead issue."

In opposition to the Board's determination, Cobb urges that the Railway's restoration of seniority was unacceptable because his seniority could not be "unimpaired" as long as his claim for pay for time lost was denied. To quote Square Cobb's brief:

The Superintendent's decision was not acceptable because he pointed out specifically in his letter of June 25, 1969 that he was willing to reinstate me, but that he was not willing to pay me for any lost time. So I made my timely appeal under Union Agreement, because I had first appealed for seniority unimpaired and back or lost time. I know the word, *unimpaired* means not altered or damaged in any manner, and I knew from the Superintendent's letter of June 25, 1969, that I was damaged or hurt.

Thus, by conditioning the "acceptance" of his restoration to seniority on an accompanying granting of his claim for back pay, Cobb seeks to keep alive his claim for reinstatement as a basis for unemployment compensation even after he has been offered reinstatement and has refused to accept it. We cannot escape the conclusion that this is an unreasonable interpretation of the Superintendent's letter, and that the Board was entirely correct in rejecting it as a basis for unemployment benefits.

Having rejected Cobb's claim that he was "available for work" because of the continued prosecution of his claim for reinstatement against the Railway, we must decide whether the record supports the Board's determination that Cobb's efforts to obtain work elsewhere were not bona fide. This is a more difficult issue for us because Cobb submitted a list of places where he claimed to have sought work unsuccessfully. The hearing examiner doubted Cobb's sincerity in making these claims. There was evidence that the job market in Birmingham at the time was good. Further, Cobb's refusal to return to his railroad job with Southern Railway tended to discredit his claim of willingness to work. In the face of these facts, and some contradictions of Cobb's claims in the record, we cannot say that the hearing examiner's credibility judgment is not supported by substantial evidence. In affirming the Board, we are mindful of the limitations on the scope of our review of these cases. The statute requires, and this Court has long held, that a decision of the Board should not be set aside on judicial review if it is supported by substantial evidence. Fingar v. United States Railroad Retirement Board, 5th Cir. 1968, 402 F.2d 544.

Affirmed.