James L. ELZY, Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent.

No. 85–4583
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1986.

T. Gerald Henderson, Alexandria, La., for petitioner.

General Counsel, RRB, Bureau of Law, Stephen A. Bartholow, Rachel M. Lopez, Chicago, Ill., for respondent.

Before RUBIN, REAVLEY and HILL, Circuit Judges.

PER CURIAM:

James L. Elzy appeals the denial by the Railroad Retirement Board of his claim for a disability annuity under the Railroad Retirement Act. Because we find that the Board's decision is supported by substantial evidence, we affirm.

### Factual Background

Elzy worked as a track foreman for Missouri Pacific Railroad from 1968 until 1980, when he injured his back. Following his injury, Elzy underwent surgery, which, although successful, was not able to completely eliminate his problem. On June 3, 1981, Elzy filed with the Railroad Retirement Board (the "Board") an application

for an annuity under the Railroad Retirement Act. Under the Act, an individual who is unable to engage in any regular employment because of a permanent physical or mental condition is eligible for a disability annuity. 45 U.S.C. § 231a(a)(1)(v) (1982).

The Board obtained medical reports of Elzy's condition, and, in September of 1981, the Bureau of Retirement Claims, the Board's initial adjudicating unit, found that Elzy's back injury was not severe enough to prevent him from performing regular and substantial work. His claim for a disability annuity was therefore denied. At the request of Elzy's attorney, the Bureau reconsidered its decision, but again denied the claim. Elzy appealed to the Bureau of Hearings and Appeals, the Board's intermediate appellate unit. After a hearing, an appeals referee sustained the decision of the Bureau of Retirement Claims. Elzy then appealed to the Board itself, and, after obtaining additional medical evidence (to which it subsequently did not refer in its decision), the Board adopted the decision of the appeals referee.

### Discussion

Disability claims under the Railroad Retirement Act are evaluated under the same sequential process required by social security regulations. *See* 20 C.F.R. § 404.1520 (1985); *Burleson v. Railroad Retirement Board,* 711 F.2d 861, 862 (8th Cir.1983). This process requires the Board to determine initially that Elzy is not working, has a severe mental or physical impairment, and is unable to do the kind of work he has done in the past. There is no dispute that Elzy meets these initial requirements of the evaluation process. The dispute in this case centers on findings of fact made as part of the last step of the process, which requires the Board to determine whether Elzy can perform work other than what he did before the injury. 20 C.F.R. § 404.-1520(f)(1) (1985).

Under the last step of the evaluation process, the Board must make a factual determination of Elzy's personal characteristics; that is, the Board must make deter-minations regarding Elzy's residual functional capacity, age, work experience and education. *Id.* The Board must then determine whether significant numbers of jobs exist in the national economy for a person with Elzy's personal characteristics. *See id.* at §§ 404.1560(b)(3) and 404.1566. This determination is usually made by comparing an applicant's personal characteristics to Medical-Vocational Guidelines, which represent an administrative determination that a significant number of jobs exist in the national economy for individuals with specific characteristics. *See id.* at § 404, App. 2.

In this case, the Board adopted the findings by the appeals referee that Elzy is not functionally illiterate and that he is capable of performing light work. An individual of Elzy's age (49 at the time of the Board's decision) and work experience (unskilled) who is not illiterate and who can perform light work is not considered disabled under the guidelines, and the Board so concluded.

Elzy challenges the findings that he is capable of light work and that he is not illiterate, asserting that they are not based on substantial evidence. He also argues, apparently, that the finding that significant work activities exist for him in the national economy, made implicitly through use of the guidelines, is not supported by substantial evidence because the appeals referee did not hear testimony from a vocational expert.

Before examining Elzy's challenges to the Board's findings of fact, we must note that our scope of review is limited. The Board's findings are conclusive if there is substantial evidence to support them. 45 U.S.C. § 231(g) (1982); *Kurka v. United States Railroad Retirement Board,* 615 F.2d 246, 250–51 (5th Cir.1980). Evidence is substantial if it consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). While we require more than a mere scintilla of evidence, we may not substitute our judgment for that of the Board.

*See Davis v. Schweiker,* 641 F.2d 283, 285 (5th Cir.1981).

## I.

Elzy first challenges the finding that he has a residual functional capacity for light work. Residual functional capacity is a term of art designating an applicant's capacity for work on a regular and continuing basis despite a physical or mental impairment. 20 C.F.R. § 404.1545 (1985). The determination combines a medical assessment of an applicant's physical or mental condition with descriptions by physicians, the applicant, and others of any limitations on the applicant's ability to work. *Id.* Light work is defined as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds.... [and which] requires a good deal of walking or standing ...." 20 C.F.R. § 404.1567(b).

The evidence regarding Elzy's capacity to work is conflicting. The record contains observations and conclusions of five doctors, and, while the medical assessments appear to agree that Elzy's back injury constitutes a permanent physical impairment, the doctors do not agree on the extent to which the injury limits Elzy's ability to work. Three doctors, including the physician who performed Elzy's back surgery, concluded that while Elzy could not perform heavy labor or return to his railroad job, he could perform tasks involving light lifting and walking. Two of the doctors, however, concluded that Elzy was "100% disabled," R. 85, and "disabled from resuming any gainful employment." R. 87.

In addition to the conflicting medical assessments of his ability to work, Elzy's own testimony regarding his capacity to work is inconsistent. Elzy testified personally that he was limited in his capacity to work because he could not sit, stand or walk for long periods of time without suffering from back pain, but he also testified that he could sit for two hours, that he spent his days sitting and standing, and that he could lift and carry a one-gallon can of gas. In addition, medical reports from

his treating physician noted that "Elzy is taking approximately from 8 to 10 pain tablets a month ..., is doing his walking exercises and relates that he walks a mile per day." R. 78.

Conflicts in the evidence, including those arising in the medical opinions, are to be resolved by the Board. *Laffoon v. Califano,* 558 F.2d 253, 254–55 (5th Cir. 1977). Moreover, the weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. *See* 20 C.F.R. § 404.1513 (1985); *Jones v. Heckler,* 702 F.2d 616, 621 (5th Cir.1983). Thus, the Board could properly discount the medical assessments stating that Elzy was completely disabled. Finally, it is up to the finder of fact to determine a witness's credibility in light of conflicting evidence. *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). Thus, the Board could properly discount Elzy's own assessment of his capabilities. Despite the inconsistencies in the record, we conclude, therefore, that the Board's finding that Elzy is capable of light work is supported by substantial evidence.

## II.

Elzy also challenges the Board's finding that he was not functionally illiterate. Despite Elzy's claim that he was illiterate, school records indicate that he had completed the ninth grade. Moreover, Elzy himself admitted that he had completed the ninth grade, that he could write a letter if he had to, and that there were other railroad foremen who could not read or write as well as he could. Given the school records and the conflicts in Elzy's own testimony, it was again up to the Board to determine the credibility of his claim of illiteracy and weigh the evidence. We conclude that there is substantial evidence to support the Board's finding that Elzy was not functionally illiterate.

## III.

Finally, Elzy apparently asserts that the conclusion that "significant numbers of

jobs exist [for him] in the national economy," implicitly made through reliance on the Medical-Vocational Guidelines, is not supported by substantial evidence because there is no testimony by a vocational expert supporting that conclusion. 20 C.F.R. § 404.1560(b)(3) (1985). This court has consistently permitted reliance on the guidelines alone as a means of determining whether work is available to an applicant. *See, e.g., Johnson v. Heckler,* 767 F.2d 180, 182 (5th Cir.1985). Only where an applicant suffers from limitations on his ability to work, such as extreme and constant pain, which are not reflected in a simple description of the applicant's personal characteristics, will we require use of a vocational expert. *See, e.g., Lawler v. Heckler,* 761 F.2d 195, 197 (5th Cir.1985). In such cases, the additional limitations affect the applicant's ability to find work in a way which cannot be measured by the guidelines.

■ In this case, the guidelines provide sufficient evidence to support a conclusion that jobs exist which Elzy can perform. Elzy does not challenge the Board's specific conclusion that any "pain associated with [Elzy's] back impairment is treated only occasionally and of itself is not an additional severe impairment." R. 30. Moreover, while Elzy is certainly limited in his capacity to work, his limitations were taken into account in the Board's determination that he is capable of performing only light work. That determination, as discussed above, is supported by substantial evidence. Since Elzy has no limitations in addition to those reflected in his personal characteristics, we conclude that use of a vocational expert was unnecessary in this case.

AFFIRMED.