Richard GLENN, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 86–2336.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1987.
Decided March 4, 1987.

Davie Paul Allen, Hammond, Ind., for plaintiff-appellant.

Denise S. Spencer, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER, and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This is an appeal from a decision by the district court affirming the denial of social security disability benefits. Richard Glenn, age 46, formerly a baker's helper, suffers from degenerative arthritis of the hips; both his hips have been replaced. As a result of this impairment, he can no longer work as a baker's helper. The only work he can do now is sedentary. Since sedentary work is still work, it might seem to follow that he is not disabled. But disability is a function in part of employment opportunities, *Cummins v. Schweiker*, 670 F.2d 81, 83 (7th Cir.1982), and employability in turn is a function not only of one's physical condition but of education, age, and other factors. Under the Medical-Vocational Guidelines promulgated by the Social Security Administration (see 20 C.F.R. Part 404, Subpart P, App. 2, Tab. 1), a person of Glenn's age, vocational background, etc. is entitled to social security disability benefits, notwithstanding his ability to do sedentary work, if he is illiterate. This is in recognition of the fact that very few sedentary jobs are available in the economy for people who can't read and write, so that an illiterate person who is disabled from performing all but sedentary work is disabled, period. The administrative law judge, however, found that Glenn is not illiterate, but is in the next highest category—a person with marginal education. Under the guidelines this disqualifies him from benefits. If the administrative law judge's finding of literacy is supported by substantial evidence, therefore, Glenn loses. Glenn's challenge to other findings made by the administrative law judge has no possible merit, and we rest on the district judge's discussion of them.

Terms like "illiterate" and "marginal education" are not self-defining, but regulations issued by the Social Security Administration attempt to define them. Illiteracy is "the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal education." 20 C.F.R. § 404.1564(b)(1). Marginal education "means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of job. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). These definitions are helpful, but they do not (and perhaps in the nature of things could not) establish clear rules over the whole range of potential disputes, such that once the facts are found the legal outcome can be obtained by a mechanical application of the rules. The regulations make clear that being able to sign your

name doesn't make you literate and that you can be illiterate even if you have had a significant amount of formal schooling (it may not have taken). Beyond that, the picture dims. If the definition of "marginal education" is read literally, Glenn loses, because he must have sufficient arithmetical, reasoning, and language skills to do simple, unskilled jobs; he held such a job for many years, before his hips were replaced. But presumably it should not be read literally, for that would result in the following *reductio ad absurdum*: if no ability in reading, writing, or arithmetic were necessary to perform unskilled work, an applicant would be deemed to have a marginal education even though he was completely illiterate. If the words "such as instructions and inventory lists" in the definition of "illiteracy" are emphasized, maybe Glenn wins, because the evidence suggests that his ability to read instructions and lists is extremely limited.

We can get little help from the case law. There are few cases, and they turn, as perhaps in the nature of the inquiry they must, on their particular and nonrecurrent facts. *Hagan v. Schweiker*, 717 F.2d 1229 (8th Cir.1983) (per curiam), may be closest, and the applicant lost: "Evidence of plaintiff's literacy is provided by his testimony that he has a fifth-grade education, can follow diagrams and measurements quite well, and can 'make things out' by picking through words." *Id.* at 1230. Glenn, too, can pick things out, as we shall see, and had either a fourth or sixth grade education; but whether he could "follow diagrams and measurements quite well" is not clear. Also, a vocational expert testified that Hagan had skills which he could transfer to a new job; there was no similar testimony here. In *Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 540 (6th Cir.1981), the decisive fact that was held to require a remand to the Secretary was that the applicant was incapable of doing even simple arithmetic, a prerequisite to literacy under the regulations as the court interpreted them; Glenn does not argue that he can't do arithmetic. In *Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir.1986) (not a social security

case, but the social security regulations were applicable), the applicant had completed ninth grade and could write a letter, and the court upheld the finding that he was literate; Glenn's educational attainments and writing ability are more limited. The applicant in *Boone v. Secretary of Health & Human Services*, 595 F.Supp. 758, 760 (E.D.Mich.1984), couldn't write even a simple note, and Glenn, as we shall see, can. The applicant in *Ford v. Heckler*, 572 F.Supp. 992, 993 (E.D.N.C.1983), couldn't even write his name. The applicant in *Holliday v. Schweiker*, 563 F.Supp. 1272, 1279 (N.D.Ill.1983), could write only his name; moreover, the Secretary had rested his case entirely on the applicant's having completed the eighth grade, and had refused to consider rebuttal evidence—a dangerous procedure, considering the quality and (more important) standards of some American schools today. The Secretary had also failed to show that the applicant could do other substantial gainful activity.

 So we, too, must consider the particular facts in this case. Whether, in light of the fact that the Secretary's determination has already been reviewed by the district court, further review of this highly fact-bound question is a productive use of a federal appellate court's limited time is a matter for Congress rather than us to decide.

██ Glenn completed either the fourth grade of elementary school or the sixth grade. He cannot read a newspaper although he can pick out some words in it. He cannot write a letter, but he can write a brief note such as, "I'll be back at 10:00." He couldn't read the notice of hearing that the Social Security Administration sent him, but as the notice was in legalese (despite the Administration's desire, apparently impossible for lawyers to fulfill, to write its notices in basic English), this cannot be decisive evidence of illiteracy.

His lawyer gave him the following recipe to read from a Betty Crocker cookbook: HOT BREADS IN FOIL Heat oven to 400°. Cut 1 loaf (1 pound) French bread into 1–inch slices, cut Vi-

enna, rye or pumpernickel bread into ½-inch slices or split 8 large individual club rolls in half horizontally. Spread generously with ½ cup soft butter or margarine or one of the Butter Spreads (below).

Reassemble loaf or rolls; wrap securely in 28 × 18–inch piece of heavy-duty aluminum foil. Heat loaf 15 to 20 minutes, rolls 10 to 12 minutes.

Glenn read to "slices," but was unable to make out the first "1," "French," and "inch." At this point the transcript becomes confused. Eventually his lawyer interrupted Glenn—who was trying to figure out words like "individual" by spelling them aloud—by saying, "I think that's a fair demonstration."

The Betty Crocker recipe is complex. Glenn testified that he can read simple work orders, such as ones telling him to make a 7, 8, or 9–inch white, yellow, or chocolate cake. In Glenn's words, "And the orders, like the orders on a spindle like for cakes and that. Like, you've got a 7″ cake, 8″ cake, and 9″ cake, and you can read white, chocolate, or yellow, you know? And you know how much of that to make, or so forth." He can also copy recipes, but he can't write them from memory. In summary, he can compose and write only the simplest messages, and he can readily comprehend only the simplest written instructions.

To decide whether Glenn is "literate" ( = marginally educated) or "illiterate" is to impose a dichotomous classification on a continuous phenomenon; but law does that all the time for the sake of administrative simplicity, a pertinent illustration being *Stephens v. Heckler*, 766 F.2d 284, 286 (7th Cir.1985). The regulations provide some guidance in performing this unavoidably arbitrary task of classification. They make clear that to be deemed literate you need only be able to read and write well enough to be able to hold simple, unskilled jobs. This is not everyone's idea of literacy; it would not satisfy the distinguished literary critic who said that "He who has read Kafka's *Metamorphosis* [the story about a man who wakes up one morning to find that he's a giant bug] and can look into his mirror unflinching may technically be able to read print, but is illiterate in the only sense that matters." George Steiner, *Literacy*, in Steiner, Language and Silence: Essays on Language, Literature, and the Inhuman 3, 11 (1974). The definition of literacy depends on context: what is literacy being defined for? See Hunter & Harman, Adult Illiteracy in the United States: A Report to the Ford Foundation 13–19 (1979); National Institute of Education, Fifth Report of the National Council on Educational Research 34–36 (1979). For the severely functional purpose of identifying a class of workers with negligible employment opportunities, the standard for literacy has been pitched quite low, and appropriately so; for the question is only whether the applicant is so deficient in ability to read and write that he cannot obtain even an unskilled job. Although Glenn apparently can read and write only the simplest messages, this was adequate literacy for purposes of his job as a baker's helper, and may be adequate for the unskilled sedentary jobs to which his physical impairment now confines him. His lawyer made no effort to demonstrate that the recipe which he showed Glenn was no harder than the kind of directions required for typical sedentary work, and he interrupted Glenn before Glenn had admitted defeat in his halting effort to comprehend the recipe. When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.

The application of the definitions in the regulations in a close case such as this is judgmental, and courts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence. The question, to repeat, is not whether we or George Steiner would call Mr. Glenn literate but whether he fits the definition in the regulations. That depends on whether he can read well enough—though very poorly—to perform a job requiring few skills. The administrative law judge thought he could, and while

the case is very close (in part because the administrative law judge did not elaborate his conclusion that Glenn was literate), we cannot say that his determination was unsupported.

AFFIRMED.