owed to another but does not act "in the name of the creditor."

### Summary Judgment

In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that she is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). *See also* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2739 (1983).

By affidavit, defendant Wilson avers that: (1) she is an employee of defendant Famous Barr, (2) she collects debts only for defendant Famous Barr and does not collect debts owed to any other persons, (3) when she collects debts for defendant Famous Barr, she informs the debtor that she works for defendant Famous Barr and she never represents to the debtor that she is working for anyone other than defendant Famous Barr. Further, by affidavit, Joseph Williams, a Vice–President at defendant Famous Barr, avers that defendant Famous Barr collects only debts owed to defendant Famous Barr, that such debts arise from credit extended by defendant Famous Barr to debtors, and that defendant Famous Barr does not collect debts owed to other persons.

By affidavit, plaintiff avers that, when defendant Wilson contacted her, defendant Wilson misrepresented her identity and denied being associated with defendant Famous Barr.

If the finder of fact accepts defendants' version of events, then defendants Wilson and Famous Barr are not liable under the Fair Debt Collection Practices Act because they did not act as "debt collectors" as defined at 15 U.S.C. § 1692a(6) because defendant Famous Barr acted as a creditor of plaintiff, defendant Wilson acted as an employee of and in the name of defendant Famous Barr, and defendant Wilson did not indicate that she worked for a third person. Conversely, if the finder of fact accepts plaintiff's version of events, then defendants Wilson and Famous Barr may be liable under the Act because they would have acted as "debt collectors" because, by denying being associated with defendant Famous Barr, defendant Wilson did not act in the name of defendant Famous Barr and defendant Wilson impliedly indicated that she worked for a third person.

Viewing the facts in the light most favorable to plaintiff, defendants have failed to establish the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law. Therefore, defendants' motion for summary judgment is denied.

**Marion COATS, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.**

**No. 87–4074–CV–C–5.**

United States District Court, W.D. Missouri, C.D.

Oct. 27, 1987.

Marvin Tofle, Columbia, Mo., for plaintiff.

Robert Schneider, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This action involves two applications for benefits made by plaintiff under the Social Security Act. The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S. C. § 1381 *et seq.* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Secretary of Health and Human Services under both Titles II and XVI.

Plaintiff's applications received consideration and reconsideration, but were both denied. On July 30, 1986, following a hearing, an administrative law judge (ALJ) rendered a decision unfavorable to plaintiff. The ALJ found that plaintiff was not under a "disability" as defined in the Social Security Act. On December 22, 1986, after considering evidence in addition to that which was before the ALJ, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Secretary.

Based on this Court's review of the record in this case, the Court concludes that the ALJ's conclusion that plaintiff is capable of engaging in his past work as a janitor must be affirmed.

### Factual Background

Plaintiff, 61 years old at the time of the hearing, alleges that he is disabled due to mental retardation, right knee pain and heart problems. Plaintiff is now 62 years old.

The record indicates that plaintiff was initially seen at the University of Missouri Emergency Center on August 15, 1985, complaining of stiffness in his right knee of approximately two months duration. The pain increased with motion and was somewhat relieved by Bufferin. Thirty CC's of fluid was aspirated from plaintiff's knee, and he was released with a diagnosis of knee effusion.

On August 30, 1985, plaintiff was seen at the University of Missouri Medical Clinic for evaluation of his right knee which he stated had been swollen, stiff, and painful since August 1, 1985. Motrin provided him with good relief of his swelling and pain. His health was otherwise good. The examination revealed only minimal effusion in plaintiff's knee. Although the physician noted that plaintiff had poor intelligence and some difficulty understanding, plaintiff was alert and oriented. The final diagnosis was hydroarthritis which was resolving.

On December 16, 1985, bilateral knee x-rays were taken at the University hospital. These x-rays revealed no significant cartilage loss and little, if any, evidence of degenerative disease. There was no osteophytosis. The only finding was an osseous excrescence arising from the superior aspect of the right medical malleolus, which related to an old trauma.

On February 11, 1986, plaintiff was examined by Meribeth A. Ogrinc, M.D., during which time he complained of pain in his right knee and chest. Both the knee and chest pain had improved with Ibuprophen, 800 mg., three times a day. Plaintiff told Dr. Ogrinc that he never had a heart attack, seizure, stroke, or syncope, and he did not have any complaints of numbness, tingling, or weakness except in his right knee. His lungs were clear to auscultation and percussion, and his heart showed a regular rate and rhythm without murmur, gallop, or rub. Dr. Ogrinc believed that the chest pain was due merely to chest wall tenderness. Her examination revealed that plaintiff's deep tendon reflexes were 2+ and equal. Sensory and motor examination was grossly normal, and plaintiff was able to heel-and-toe walk without difficulty. Plaintiff had a normal range of motion in his back and in the rest of his joints, including his right knee. Although there was some mild crepitatious on the range of motion of the right knee and a small synovial effusion, there was no erythema or warmth noted. Dr. Ogrinc's final impression was

that plaintiff—"has been in fairly good health most of his life, that he used to have a problem with alcohol abuse but has not had any difficulty with this recently. The right knee symtomatology is perhaps secondary to instability in that knee. Today he has very little evidence of decreased range of motion or loss of muscle mass involving that knee. Based on his history and physical today I do not see any obvious cause for permanent disability."

On February 27, 1986, an examination at the University of Missouri Orthopaedic Clinic revealed improvement with the use of Motrin and a cane. No ligamentous instability was found. Plaintiff was told to continue with Motrin and the cane and was told to return in three months.

On June 13, 1986, plaintiff underwent cognitive and educational screening. Based on the examinations given, Donna Haley, M.Ed., concluded that plaintiff's cognitive and academic functioning appeared to be in the mentally retarded range. She further stated that his predominant behaviors of delayed responses, poor concentration, slow and aimless approach to tasks, and poor memory were consistent with a history of alcoholism and that plaintiff could be considered illiterate within the meaning of 20 C.F.R. § 404.1564.

A hearing was held before an ALJ on June 4, 1986, in Jefferson City, Missouri. Plaintiff was represented by an attorney. Plaintiff testified that he last worked for the University of Missouri as a janitor. He testified that his duties included cleaning the floor, vacuuming, taking out the trash, and mopping floors. Plaintiff testified that the job involved a lot of pulling and lifting of trash cans which he estimated weighed about one hundred pounds. Plaintiff also testified that he had worked as a janitor with the University on and off for a total of ten years, but that he was finally laid off because his knee pain prevented him from fulfilling his janitorial duties. He testified that he had filed for worker's compensation, but his claim was denied. Plaintiff also testified that he had an eighth grade education.

Plaintiff testified that his leg hurt all of the time and that his "heart problem" caused him to have hot flashes and be short of breath, tired and weak. Plaintiff stated that he took Ibuprophen three times a day, which he stated made him drowsy. Plaintiff also testified that he did not do anything during the day. He further testified that he had not driven for two years and that he did not believe that he could do any regular work because of the pain in his knee. Finally, plaintiff testified that he was given the cane which he had used for about a year by the University of Missouri Orthopaedic Clinic.

In a decision dated July 30, 1986, the ALJ, in concluding that plaintiff was not disabled and that he could return to his former job as a janitor, noted the following:

"The claimant is not engaging in substantial gainful activity. He was uncertain of the date he last worked, but no earnings have been posted since 1983 to his earnings record. His impairment is severe, as that term is defined by Regulations 404.1521 and 416.921, since it significantly restricts his ability to engage in basis [sic] work-related activities. His impairment is not accompanied by clinical findings which meet or medically equal the requirements for any impairment contained within the Secretary's Listing of Impairments. The Secretary's listings, at section 12.05(C) requires a valid verbal, performance or full scale I.Q. of 60 to 69 inclusive, and a physical or other mental impairment imposing additional and significant workrelated limitation of function. Mr. Coats' I.Q. falls within the parameters described by the Secretary's listing, but there is no indication that he has another physical or mental impairment which imposes significant work-related limitation of function. Moreover, the requirements of 12.05(D) are not met, because there is no indication that the claimant has marked restriction of activities of daily living, marked difficulties maintaining social functioning, deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, or repeated episodes of deterioration or decompensa-

tion in work or worklike settings which cause him to withdraw from that situation. On the contrary, the claimant's earnings record establishes that Mr. Coats maintained steady employment for at least 33 years. He testified that he was laid off from his job as a janitor due to a sore knee. Mr. Coats continues to complain of knee pain, yet physical examinations have shown no significant knee problem. The claimant had fluid aspirated from his right knee in August, 1985, but subsequently has displayed no significant limitation in his right knee. Indeed, his range of motion is essentially within normal limits. He is able to heel and toe walk. The remainder of his physical examination has been normal. The medical evidence establishes that the claimant is quite healthy. Undoubtedly, his significantly reduced intellectual functioning precludes him from engaging in any skilled work. The claimant's past job as a janitor, however, was not skilled. Mr. Coats is illiterate, but his past job as a janitor did not require him to read or write. He merely swept and mopped floors, and carried out trash. Substantial evidence establishes that he retains the residual functional capacity to return to his past relevant work. He is not entitled to a period of disability and disability insurance benefits medically eligible for Supplemental Security Income Benefits, under the Social Security Act, as amended."

## Standard of Review

The scope of judicial review of the Secretary's decision is very narrow; the Secretary's ruling is conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir.1976). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). This standard of review, however, is "more than a mere rubberstamp of the Secre-

tary's decision." *McMillian*, 697 F.2d at 220.

The claimant has the initial burden of establishing the existence of a disability as defined in 42 U.S.C. § 423(d)(1). Once the claimant establishes that his impairment is so severe that he cannot return to his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful activity. *O'Leary v. Schweiker*, 710 F.2d 1334, 1337 (8th Cir.1983); *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir.1983). To meet this burden, the Secretary need not find a specific job opening for the claimant, but must prove that substantial gainful activity is realistically within the mental and physical capabilities of claimant. *McMillian*, 697 F.2d at 221.

## Discussion

The question before the Court is whether the ALJ's determination that plaintiff retained the residual functional capacity to perform his past relevant work as a janitor is supported by substantial evidence. As recently noted by the Eighth Circuit Court of Appeals in *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir., 1987), "to engage in fact-finding in a social security case is not within the province of a federal court." For the following reasons, the Court concludes that the ALJ's determination is supported by substantial evidence in this record.

To begin with, as noted by the ALJ, while plaintiff claims that his constant knee pain is disabling, all physical examinations of plaintiff show no significant knee problem. The medical evidence showed that the range of motion in his right knee is essentially normal, and bilateral knee x-rays showed no significant cartilage loss and little evidence of degenerative disease. Additionally, there was no osteophytosis. In essence, there is no objective medical evidence in the record to support plaintiff's allegation of disabling right knee pain. Thus, the question becomes whether the ALJ properly discounted plaintiff's subjective complaints of disabling right knee pain.

As noted by the Secretary, in order for pain to be disabling, it must be of such severity and duration that it precludes all substantial gainful activity. *Andrews v. Schweiker*, 680 F.2d 559, 560 (8th Cir. 1982). The ALJ may disbelieve plaintiff's subjective complaints as long as a credibility finding is made. *Sebion v. Heckler*, 757 F.2d 960 (8th Cir.1985); *Smith v. Heckler*, 760 F.2d 184 (8th Cir.1985). Furthermore, an assessment of a claimant's credibility is for the ALJ and not the courts, so long as the ALJ's credibility finding is supported by the record.

In this case, the ALJ properly discounted plaintiff's claim that his right knee pain is disabling. He found that plaintiff's complaints were incredible given the fact that they were not supported by the medical record in this case. And while direct medical evidence of a cause and effect relationship between the impairment and the degree of plaintiff's subjective complaints need not be produced, *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984), the absence of an objective medical basis to support the degree of severity of the subjective complaints alleged is still a factor to be considered in evaluating a claimant's credibility *Ward v. Heckler*, 786 F.2d 844, 847 (8th Cir.1986).

In addition, the ALJ considered plaintiff's subjective complaints in making his credibility finding and noted that plaintiff continued to perform ordinary daily activities, including housework, grocery shopping and socializing. The ALJ also emphasized the fact that plaintiff's reports to his treating physicians establish that his knee pain is controlled with medication.

Furthermore, the ALJ had an opportunity not only to evaluate the evidence in the record, but also had an opportunity to observe plaintiff's demeanor at the hearing. Although an ALJ is not free to reject plaintiff's subjective complaints solely on the basis of personal observations, plaintiff's demeanor is still a factor which can be considered. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir.1985). After evaluating all of the evidence in the record and the testimony at the hearing, the ALJ concluded that plaintiff was not disabled, and the Court concludes that this determination is supported by substantial evidence in this record.

Plaintiff also alleges disability due to mental retardation and illiteracy. However, while plaintiff's significantly reduced intellectual functioning may preclude him from engaging in any skilled work, these intellectual limitations do not, and have not, precluded him from engaging in unskilled work like that of janitor. Thus, the Court concludes that the ALJ's determination that plaintiff's mental retardation and illiteracy are not disabling is supported by substantial evidence.

Finally, plaintiff claims that the ALJ erred by failing to consider and adequately develop the record concerning plaintiff's claim of a disabling heart condition. However, for a number of reasons, the Court finds that there was no error by the ALJ on this basis.

First, although plaintiff asserted that he had a heart condition, there was nothing in the record to support this complaint. The examination by Dr. Ogrinc, a consulting physician, showed no irregularities of the heart, and Dr. Ogrinc stated that any chest pain was merely chest wall tenderness. Thus, there was absolutely no basis in the record for plaintiff's claim of a disabling heart condition.

Second, as noted by the Sixth Circuit in *Landsaw v. Secretary of Health & Human Services*, 803 F.2d 211 (6th Cir.1986):

"The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.92, 416.913(d). Moreover, as the government argues, the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grants him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."

*Id.* at 214. *See also* 20 C.F.R. § 416.917(a). Thus, where the record upon which the ALJ based his decision provides no support

for a heart condition, a consultative examination is not required.

Finally, plaintiff was represented at the hearing by counsel who had ample opportunity to come forward with such evidence if he wished. *See Glenn v. Secretary of HHS*, 814 F.2d 387, 391 (7th Cir.1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.")

Thus, the Court concludes that the ALJ did not err in failing to further develop the record as to plaintiff's claim of a disabling heart condition.

Accordingly, it is hereby

ORDERED that the decision of the Secretary is affirmed. It is further

ORDERED that the parties are to bear their own costs.