39 F.3d 1166
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Richard T. GRANFIELD, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 94-1491.
 United States Court of Appeals,
First Circuit.
 Nov. 2, 1994.
 
 On Petition to Review a Decision of the U.S. Railroad Retirement Board
 Adam H. Becker and Martin E. Mason on brief for petitioner.
 Catherine C. Cook, General Counsel, Thomas W. Sadler, Assistant General Counsel, Michael C. Litt, General Attorney, and Steven A. Bartholow, Deputy General Counsel, on brief for respondent.
 PETITION DENIED.
 Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Richard T. Granfield, appeals from the decision of the Railroad Retirement Board finding him not disabled and therefore not eligible for a disability annuity under the Railroad Retirement Act, 45 U.S.C. Sec. 231a(a)(1)(v). Petitioner has been diagnosed as having fibrositis (an inflammation of the muscles and fibrous tissues of the locomotor system) and, as a result, allegedly suffers from the following symptoms: (1) pain in his shoulders, lower back, neck, hands, feet and elbows; (2) swelling and cramping of the hands, feet and other joints; and (3) fatigue. He also has been diagnosed as having essential nonfamilial tremor of the hands. Petitioner had worked as a locomotive fireman and locomotive engineer from July 1972 to December 1987. At the time he stopped working, petitioner was 33 years old; he has a high school diploma. There is no dispute that petitioner cannot return to his past work. The basic issue for review, then, is whether there is substantial evidence to support the Board's decision to adopt the findings of the hearing officer that petitioner's ailments do not prevent him from performing light work.
 
 
 2
 The Railroad Retirement Act provides that persons with the required number of years with a railroad are entitled to an annuity if they have a "permanent physical or mental condition ... such that they are unable to engage in any regular employment." 45 U.S.C. Sec. 231a(a)(1)(v). The standard for determining whether an individual can engage in regular employment is the same as the one used to analyze claims for disability under the Social Security Act. E.g., Bowman v. Railroad Retirement Board, 952 F.2d 207, 209 (8th Cir. 1991); Peppers v. Railroad Retirement Board, 728 F.2d 404, 406 (7th Cir. 1984) (per curiam). Thus, the Social Security regulations and cases interpreting them may be used in reviewing decisions of the Board under Sec. 231a(a)(1)(v). Bowman, 952 F.2d at 209 (collecting cases); Aspros v. United States Railroad Retirement Board, 904 F.2d 384, 386 (7th Cir. 1990) (regulations); Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1224 (5th Cir. 1986) (use of same sequential evaluation process). Because petitioner could not return to his former employment, the burden is on the Board to show the existence of other jobs in the national economy that petitioner can perform. See Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 524 (1st Cir. 1989) (per curiam).
 
 
 3
 Petitioner argues that in determining that he had the ability to do light work, the hearing officer relied on only minimal portions of his and his wife's testimony concerning petitioner's daily activities and, in so doing, took these statements out of context. In a related vein, petitioner also asserts that the hearing officer erroneously disregarded petitioner's subjective complaints of pain. He maintains that objective medical evidence exists to support a finding that his pain is completely disabling.
 
 
 4
 At the hearing, petitioner stated that the pain and cramping in his hands is always present. The more he uses his hands the worse the cramping becomes. Due to this condition, petitioner has trouble gripping, using hand tools and eating utensils, holding a cup, and performing any activity on a repetitive basis. Petitioner has had some improvement concerning the tremors in his hands with Inderal (which petitioner had been taking for only one month at the time of the hearing). Petitioner also testified that he experiences constant pain in his wrists and elbows, again, aggravated by use. Similarly, the pain in petitioner's neck and shoulder joints is persistent and prevents him from raising his arms whether or not he is trying to lift an object. As for his lower back and hips, petitioner stated that he has ongoing spasms and stabbing, sharp pains.
 
 
 5
 Petitioner then described his daily activities and physical limitations. He stated that he could sit for 20 to 25 minutes at a time, stand for 15 to 20 minutes and walk for 10 to 15 minutes before experiencing pain. He avoids any lifting, bending, stooping or climbing. During a typical day, petitioner might do some light vacuuming, load the dishwasher, clean the windows, pick up around the house, do the laundry or mow the lawn on a riding mower; petitioner can perform these activities, however, for only very short periods of time. Petitioner's recreational activities are fishing, hunting and woodworking. The night before the hearing, petitioner stated that he had fished for one-half hour-the most he could handle at a time. He had gone on a hunting trip during the previous week for two days; however, he was limited to one to two hours of actual hunting. He stated that he had done some woodworking in the last month, but experienced trouble handling small pieces of wood.
 
 
 6
 Petitioner's wife also testified. She stated that she had to fill the coal bucket, make the meals and, on occasion, cut up petitioner's food for him. Petitioner could not sit for any period of time, had trouble concentrating and was frustrated by his inability to finish tasks. In a written statement, she added that petitioner had difficulty with writing and that petitioner dictated all of his correspondence to her. Petitioner's hands shake so much that he could not tie a knot or hold a cup of coffee. This statement was dated December 1989, before petitioner started taking Inderal for the tremors.
 
 
 7
 Even though the hearing officer did not allude to the limits petitioner described, there is evidence in the record that petitioner was not as incapacitated as he claimed. In contrast to petitioner's testimony are the reports and evaluations of the physicians who treated petitioner-Dr. Philip Weinstein and Dr. John Guttell. Dr. Weinstein, who began seeing petitioner in October 1988, reported "significant improvement" in petitioner's fibrositis with the use of Elavil and Naprosyn. Petitioner's symptoms of stiffness and pain in his joints worsened with "excessive" work. However, in March 1989, petitioner's condition improved. Finally, an examination in June 1989 revealed no swelling in the joints and no trigger point tenderness-a particular symptom of fibrositis.
 
 
 8
 Dr. Guttell also noted, in April 1989, that treatment with Elavil and Naprosyn had improved petitioner's condition to the point where he could do more with his hands, although they got stiff by the end of the day. Dr. Guttell stated that petitioner's prognosis was fair and opined that he did not think that the disease would progress. However, because fibrositis is a chronic condition, periodic exacerbations could occur. In October 1990, Dr. Guttell completed a Board Report of Physical Condition. At this time, petitioner was experiencing intermittent left shoulder and neck pain. Dr. Guttell concluded that petitioner's condition had "markedly improved" since 1989, but that petitioner still became uncomfortable with increased activities.
 
 
 9
 An April 1990 treatment note revealed that petitioner had "very little in the way of trigger points" and no inflammatory changes. In October 1990, petitioner reported occasional pain in the back of his neck on the left side and in his left shoulder if he "overdoes it." However, if petitioner worked "within reason," he had no problems. His wrists and elbows were fine. In February 1991, Dr. Guttell referred petitioner to a neurologist because of tremors in petitioner's hands. Petitioner reported having trouble with writing and stated that he was not able to hold a full cup of liquid. The neurologist diagnosed essential nonfamilial tremor-a "[f]ine, rapid action tremor involving both upper extremities." He prescribed Inderal. In March 1991, petitioner reported experiencing "intermittent flares of pain" in the posterior cervical and medial scapula areas.
 
 
 10
 It is true that petitioner described drastic limitations in his abilities to do routine chores and to engage in the physical requirements of any type of work; it is also true that petitioner has been diagnosed as having fibrositis-a condition that reasonably can be expected to produce pain and stiffness in joints such as the ones in an individual's hands. See Avery v. Secretary of Health and Human Services, 797 F.2d 19, 20-21 (1st Cir. 1986). Yet the hearing officer was warranted in discrediting the severity of petitioner's allegations given the reports of Drs. Weinstein and Guttell. Neither physician described symptoms such as the ones that petitioner reported at the hearing nor did they state that petitioner was so limited that he could do no work. Moreover, we pay especial attention to the evaluation of the administrative official presiding at the hearing given the subjective nature of such complaints. See Ortiz, 890 F.2d at 523; Sherwin v. Secretary of Health and Human Services, 685 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 958 (1983).
 
 
 11
 Of particular relevance in this context is Dr. Guttell's assessment of petitioner's functional capacity contained in his letter of March 1991. He stated that petitioner could not do any "significant" lifting of more than 15 to 20 pounds on a regular basis due to upper back and cervical spasms and because such lifting would aggravate the trigger points in his elbows. Standing and walking were "not particular problems" so long as petitioner could frequently change position. Similarly, sitting would not produce any "significant impairment" unless done for several hours at a time or done while bending over a desk. Dr. Guttell ended by stating that petitioner could not crawl, stoop, kneel, climb or crouch; further, pushing, pulling, handling and reaching were to be avoided because these activities would lead to an aggravation of the spasms in petitioner's back. The only reference Dr. Guttell made to petitioner's hands was the statement that petitioner was taking Inderal for his tremors.[1]
 
 
 12
 Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. Sec. 404.1567(b). This is consistent with Dr. Guttell's assessment. A job also is classified as light in nature "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. Again, Dr. Guttell's opinion concerning petitioner's capacity for sitting, walking and standing does not contraindicate such work. As for pushing and pulling, petitioner did not describe significant, if any, restrictions in these activities.
 
 
 13
 Further, the vocational expert (VE) who testified at petitioner's hearing stated that there were jobs available to petitioner under the following hypothetical: (1) the ability to stand for a total of six hours in the work day but up to only two hours at a time with the opportunity to change positions every 15 minutes; (2) the ability to lift up to 20 pounds at a time; and (3) limitations on the capacity to engage in repetitive bending and stooping. The VE first noted that the bending and stooping limits would preclude about 50 percent of the overall light jobs. Assuming petitioner could bend up to 15 degrees (out of 90), jobs existed as a packager, cleaner, insulator or assembler in the electronics industry. Such work involves standing at a high bench. Other jobs included spray painting and soldering. As for the two-hour limit on how long petitioner could stand, the VE stated that the above jobs only required a person to stand for one hour at a stretch.
 
 
 14
 We recognize that Dr. Alan Katz described petitioner as being "substantially disabled" and Dr. J. Edward Connors concluded that petitioner was "unemployable" due to his physical complaints. However, "[c]onflicts in the medical evidence are to be resolved by the hearing officer, not this court on review." Bowman, 952 F.2d at 211; cf. Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981) (credibility issues and what inferences permissibly can be drawn from the facts are for the Secretary of Health and Human Services). Because we find that "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support" the Board's conclusion, see Rodriguez, 647 F.2d at 222, we do not perceive any substantial question. Thus, we summarily deny the petition for review. See Local Rule 27.1.
 
 
 
 [1]
 Also, a residual functional capacity analysis completed by a non-examining physician in 1989 indicated that petitioner could frequently lift and carry up to 25 pounds. He could sit, stand and walk for up to six hours each per work day. He was limited in his ability to push and pull but could frequently stoop, kneel, crouch and crawl