# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 98-60422
Summary Calendar

---

IRWIN B. LASSETER, JR.

Petitioner,

versus

UNITED STATES RAILROAD
RETIREMENT BOARD,

Respondent.

---

On Petition to Review Decision of the
Railroad Retirement Board
R.R.B. No. A-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

---

April 22, 1999

Before KING, Chief Judge, BARKSDALE , and STEWART, Circuit Judges.

PER CURIAM:[*]

Irwin B. Lasseter, Jr. petitions this court for review of the decision of the Railroad Retirement

Board affirming a hearing officer's finding that he is not entitled to an annuity because he is not

disabled from all regular employment.  For the reasons assigned, we affirm the judgment below.

Factual and Procedural Background

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Irwin B. Lasseter ("Lasseter") began working for Norfolk Southern Railroad as a freight train employee in 1978 after receiving an honorable discharge from the United States Army.[1] In October 1991, Lasseter fell from a railcar when the ladder, on the side, broke free. Lasseter injured his back during this accident. Since then, Lasseter has sought the medical attention of many physicians. In April 1993, he underwent surgery to his lower back. Specifically, Lasseter received a lumbar hemilaminotomy at L3-4 and L4-5 on the right side, a diskectomy at L3-4 and L4-5, and a fusion at L3-5 with a right iliac crest bone graft. After monitoring the success of the operation, Dr. Thomas N. Bernard, Jr., Lasseter's surgeon, released him on March 4, 1994. According to Dr. Bernard, x-rays showed the fusion was maturing.

Yet, Lasseter claims that he continued to experience lower back and right leg pain following his release. Dr. Rosalina S. Aguilar treated Lasseter for his back injury as well as other injuries, including smoke inhalation, chemical exposure, a right hand injury and a right knee injury.[2] Dr. Aguilar referred Lasseter to two back specialists, Dr. J. Kenyon Rainer, Sr., a specialist in the field of neurological surgery, and Dr. Andrew P. Harakas, an orthopaedic back specialist. X-rays and a M.R.I study confirmed that Lasseter's back had not completely healed. On August 22, 1995, Dr. Aguilar found that Lasseter's complaints of severe pain were consistent with the X-rays and M.R.I. findings. She concluded that Lasseter's impairment was so severe that it would prevent him from engaging in any kind of gainful work for the remainder of his life. Dr. Harakas agreed with this assessment.

The Railroad Retirement Board (the "RRB") considered this evidence as well as statements less favorable to Lasseter by other examining physicians. The RRB highlighted consulting physician Dr. W. V. Crawford's December 1994 finding that although Lasseter had difficulty standing up from a sitting position, he had a normal gait. Dr. Crawford also found that despite Lasseter's ailments, he

---

[1] Lasseter was born on August 11, 1952. He is presently forty-six years old.

[2] These injuries predated the surgery on Lasseter's back.

could frequently lift less than 10 pounds, could occasionally stoop, bend, climb and had full grasping. Additionally, the RRB cited Dr. Crawford's conclusion that Lasseter had pushing and pulling capability with both hands but could not perform fine manipulation with either hand. Dr. L. P. Stumme concurred in Dr. Crawford's assessment. The RRB explained that although Lasseter is limited in his ability to work due to his low back impairment, it could not conclude that he cannot perform any regular employment, particularly sedentary work.

The RRB considered the statements of Lasseter's vocational experts, Ms. Jacobsen and Dr. Michael C. McClanahan, a certified vocational evaluator and certified rehabilitation counselor. Both found that Lasseter was unable to engage in substantial employment because of disabling pain. According to the RRB, these findings were undermined by Ms. Jacobsen's prior inconsistent statement that Lasseter could perform a full range of sedentary work. The RRB rejected Dr. McClanahan's assessment because it was inconsistent with Mr. Lasseter's own testimony that he could walk 1.5 miles, stand and sit for an hour, drive his car 100 miles and mow his lawn. In other respects, the RRB found Lasseter's testimony unreliable. Finding that Lasseter could perform sedentary work, the RRB denied his appeal.

Procedurally, this case began on October 11, 1994 when Lasseter filed his application for Employee Annuity with the RRB. The RRB denied his application approximately three months later. Lasseter's subsequent request for reconsideration was similarly denied. Lasseter appealed this matter to the RRB's Bureau of Hearings and Appeals. A hearings officer sustained the initial denial and found that Lasseter was not disabled. Lasseter then appealed the decision of the hearings officer to a three-member R.R.B panel. Again, Lasseter's claim for disability benefits was denied. This appeal followed.

Standard of Review

Disability claims under the Railroad Retirement Act are evaluated under the same sequential process required by social security regulations. See Elzy v. Railroad Retirement Board, 782 F.2d 1223 (5th Cir. 1986)(citing 20 C.F.R. § 404.1520 (1985); Burleson v. Railroad Retirement Board, 711

3

F.2d 861, 862 (8th Cir.1983)).   A decision of the RRB is not to be set aside on judicial review if it is supported by substantial evidence in the record and is not based on clear error of law.  See  Smith v. United States Railroad Retirement Board, 85 F.3d 224 (5th Cir. 1996); Elzy v. Railroad Retirement Board, 782 F.2d 1223 (5th Cir. 1986).  Substantial evidence consists of "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(defining substantial evidence in the context of the Social Security Act).

We reverse only when the evidence is so compelling that no reasonable fact-finder could have failed to find in favor of a particular party.  See  INS v. Elias-Zacarias, 502 U.S. 478, 484 (1992). While we require more than a mere scintilla of evidence, we may not substitute our judgment for that of the Board.  See Davis v. Schweiker, 641 F.2d 283, 285 (5th Cir.1981).  Where there are conflicts in the evidence, we will not substitute our judgment for that of the RRB.  See Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983)(citing Strickland v. Harris, 615 F.2d 1103, 1106 (5th Cir.1980))

.                                     Discussion

Lasseter assigns three points of error to the determination of the RRB.  First, he claims the RRB relied upon mistaken or inaccurate information to discredit him.  Next, he criticizes the RRB for relying upon medical testimony given prior to the proper diagnosis of his condition.  Finally, Lasseter faults the RRB for relying upon the opinions of two independent physicians who did not review the most recent diagnostic studies.  Finding no merit in any of these claims, we affirm the judgment of the RRB.

At most, Lasseter has demonstrated that favorable evidence exists in the record.  However, this evidence is not so compelling that it would preclude a  reasonable fact-finder from denying his appeal.  Lasseter encourages this court to accord full weight and credit to his testimony.  In doing so, we must acknowledge his testimony that he can walk 1.5 miles, stand and sit for an hour, drive his car 100 miles, and mow the lawn.  Thus Lasseter's own testimony supports the finding of the RRB that he can perform at least sedentary work.

Lasseter places particular emphasis on the February 27, 1995 MRI and X-rays as well as the statements of physicians reviewing the examination. The RRB deems these reports as ambiguous on the issue of whether Lasseter's fusion has failed. Lasseter declines to rebut the RRB's characterization in favor of highlighting the opinions of the physicians which reviewed the MRI and X-rays. The absence of a specific finding that Lasseter has experienced a failed fusion tempers the opinions of the physicians reviewing them.[3] Although the reviewing physicians accessed more recent information, the RRB was not required to consider their findings in a vacuum. Instead, the RRB properly considered such testimony along with the other information available in the record.

Included in such information were reports indicating that the fusion was healing and that Lasseter was having minimal symptoms. Record 109. Persons examining Lasseter also found that he could work as an engineer, car inspector or meter reader. Record 105-106. Other reports revealed that Lasseter could sit for two hours, walk three miles at a time and could lift 40 to 50 pounds. Record 320-24. One doctor concluded that Mr. Lasseter could stand and walk for two hours, and lift up to 20 pounds while another found that Lasseter could sit for six hours or more, stand and walk at least two hours, and occasionally lift 20 pounds. Record 351-55; 356-59. Combined the determinations of the various physicians support the RRB's finding that Lasseter is able to engage in regular employment.[4]

The record also supports a finding that any limitations relating to use of his right hand are not so severe as to preclude him from engaging in gainful employment. At least four doctors have reported that Lasseter could use his hands in some functional capacity. Lasseter attempts to

---

[3]Even had the MRI and X-ray demonstrated a failed fusion, we would still have to consider the effect of the failure. Overall, we seek to determine Lasseter's capacity to engage in any regular employment i.e. substantial gainful activity. See 45 U.S.C. § 231a(a)(10)(v); 20 C.F.R. 220.26.

[4]We do not disregard testimony more favorable to Mr. Lasseter. Nevertheless, our standard of review precludes us from substituting our judgment for that of the RRB where there are conflicts in the evidence. See Patton, 697 F.2d at 592. Lasseter has only demonstrated conflicts in the evidence. He has not demonstrated that no reasonable fact-finder could have failed to find in his favor.

distinguish the findings of three doctors–Aguilar, Rainer and Gassaway–on the basis that they had not properly examined him.[5] Nothing in the record reveals the precise nature of each examination. Each doctor, including Dr. Stumme, completed a boilerplate form entitled, "Physical Residual Functional Capacity Assessment." That form instructs doctors to offer an assessment of the patient's ability to do simple grasping, fine manipulation, and pushing and pulling "based on the doctor's examination." We decline to speculate on the quality or substance of each examination. The RRB did not err in crediting the testimony of each physician who examined Lasseter's hands.

Conclusion

On this record, we cannot conclude that the RRB erred; therefore, we affirm the judgment below.

---

[5]Both Drs. Aguilar and Rainer reported that Mr. Lasseter could use both hands for fine manipulation and simple grasping. Dr. Gassaway reported that Lasseter had no impairment in regard to either simple grasping or fine manipulation. Dr. Stumme found that Lasseter had fairly good function of the right hand along with good hand strength. Contrary to the findings of other physicians, Dr. Stumme and Dr. Crawford stated that Mr. Lasseter would have some difficulty performing fine manipulation.