United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 1, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-60689
Summary Calendar

_____

LAWRENCE A WALKER

           Petitioner

     v.

UNITED STATES RAILROAD RETIREMENT BOARD

           Respondent

_____

Appeal from the United States Railroad Retirement Board

No. 03-AP-0097

_____

Before KING, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:*

     Petitioner Lawrence A. Walker seeks review of a decision by

a three-member panel of the Railroad Retirement Board in which it

concluded that Respondent United States Railroad Retirement Board

was entitled to reimbursement of sickness benefits pursuant to

§ 12(o) of the Railroad Unemployment Insurance Act.  Because the

---

     *     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

record contains substantial evidence to support the Board's decision, we AFFIRM.

## I. BACKGROUND

On November 19, 1990, Lawrence A. Walker, who was employed as a carman by the Norfolk Southern Railway Company ("Norfolk"), allegedly suffered an injury to his neck while performing a company required stretching exercise. As a result, Walker filed a lawsuit against Norfolk for his alleged injury, a fracture to the transverse process of the seventh cervical vertebral body. Walker also claimed, and was paid, sickness benefits for his injury under the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351 et seq. On December 11, 1990, the Railroad Retirement Board (the "Board") sent to Norfolk a notice of lien under § 12(o) of the RUIA. 45 U.S.C. § 362(o). The notice advised Norfolk of the Board's right to reimbursement for any sickness benefits paid to Walker on account of Norfolk's liability. During the period from November 20, 1990 through January 21, 1998, Walker received a total of $29,925 in sickness benefits.

On May 15, 2002, Norfolk and Walker entered into a settlement agreement in the amount of $199,999.99. The amount of sickness benefits paid to Walker, $29,925, was withheld from the settlement to satisfy the Board's lien. On February 28, 2002, Walker requested reconsideration of the amount of the Board's

2

lien, claiming that the sickness benefits he received were not paid as a result of his November 19, 1990 injury, but rather as a result of an unrelated lower back problem. Walker's request was denied, and he subsequently appealed to the Board's Bureau of Hearings and Appeals. On September 8, 2003, a hearing officer denied Walker's appeal after determining that his claims for sickness benefits, like the settlement agreement, were based on the injury he allegedly sustained on November 19, 1990. Walker then appealed to the Board itself.

On May 14, 2004, the Board denied Walker's appeal. The Board noted that the injury for which Walker recovered under the settlement was a fractured transverse process. The Board further noted that each time Walker claimed sickness benefits, he claimed a transverse process fracture as one of the causes of his inability to work. The Board noted that Walker's doctor, Raul M. Diaz, testified that after August 1991, Walker was able to return to heavy physical labor. However, the Board also noted that Dr. Diaz had signed multiple supplemental doctor's statements accompanying Walker's applications for sickness benefits, which stated that Walker's inability to work was due to a cervical transverse process fracture. The Board found that the multiple statements of sickness filed by Dr. Diaz were entitled to greater weight in determining whether Walker was unable to work because of a cervical transverse fracture. Thus, the Board concluded that Walker was paid sickness benefits for a cervical transverse

fracture, and since Walker recovered from Norfolk for this same injury, the Board was entitled to reimbursement.  Walker now appeals the Board's decision.

## II. STANDARD OF REVIEW

The Board's decision is subject to review by this court under § 5(f) of the RUIA.[1]  45 U.S.C. § 355(f).  A decision by the Board is not to be set aside on judicial review if its findings of fact are supported by substantial evidence in the record and if it is not based on an error of law.  45 U.S.C. § 355(f); Elzy v. R.R. Ret. Bd., 782 F.2d 1223, 1224 (5th Cir. 1986); Fingar v. United States R.R. Ret. Bd., 402 F.2d 544, 547 (5th Cir. 1968).  "Evidence is substantial if it consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Elzy, 782 F.2d at 1224 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "While we require more than a mere scintilla of evidence, we may not substitute our judgment for that of the Board."  Id.; see also Davis v. Schweiker, 641 F.2d 283, 285 (5th Cir. 1981).

---

[1]     Section 5(f) of the RUIA states in pertinent part:

(f) Review of final decision of Board by Courts of Appeals; costs. Any claimant . . . aggrieved by a final decision under subsection (c) of this section, may, only, after all administrative remedies within the Board will have been availed of and exhausted, obtain a review of any final decision of the Board . . . in the United States circuit court of appeals [court of appeals] . . . .

45 U.S.C. § 355(f).

**III. DISCUSSION**

Under § 2 of the RUIA, the Board is authorized to pay sickness benefits to qualified railroad employees.[2]  45 U.S.C. § 362.  The Board must pay sickness benefits without regard for the liability of any person to pay damages for the underlying sickness or, in this case, injury.  Id.  The Board, however, is entitled to reimbursement from any damages payable or paid to the employee by a person liable for the same injury.  Id.  Upon notice to the liable party, the Board shall have a lien on any damages paid by that party to the extent of the amount of sickness benefits it paid to the employee.  Id.

The only issue before us is whether there is substantial evidence in the record to support the Board's finding that Walker

---

[2]    Section 12(o) of the RUIA specifically provides:

(o) Liability of third party for sickness; reimbursement of Board. Benefits payable to an employee with respect to days of sickness shall be payable regardless of the liability of any person to pay damages for such infirmity. The Board shall be entitled to reimbursement from any sum or damages paid or payable to such employee or other person through suit, compromise, settlement, judgment, or otherwise on account of any liability (other than a liability under a health, sickness, accident, or similar insurance policy) based upon such infirmity, to the extent that it will have paid or will pay benefits for days of sickness resulting from such infirmity. Upon notice to the person against whom such right or claim exists or is asserted, the Board shall have a lien upon such right or claim, any judgment obtained thereunder, and any sum or damages paid under such right or claim, to the extent of the amount to which the Board is entitled by way of reimbursement.

45 U.S.C. § 362(o).

5

received sickness benefits for the injury he sustained on November 19, 1990 (a fracture of the cervical transverse process)--the same injury for which he settled with Norfolk. Walker argues that the injury he sustained on November 19, 1990 had healed completely as of August 1, 1991. Walker asserts that after August 1, 1991, he claimed sickness benefits for multiple medical conditions, including degenerative disc disease of the lumbar spine, high blood pressure, and various mental and emotional conditions. To support his claim, Walker points to evidence in the record that he was diagnosed with a cervical strain, an injury he sustained on October 12, 1991. Walker also points to the fact that he was diagnosed with a degenerative disc disease in November 1994. However, as the Board noted, Walker's doctor, Dr. Diaz, signed multiple supplemental doctor's statements from 1990 to 1997, which accompanied Walker's applications for sickness benefits, averring that Walker's inability to work was due to a cervical transverse process fracture. Further, in his applications for sickness benefits, Walker indicated November 19, 1990 as the date he became injured. Dr. Diaz also indicated November 19, 1990 as the date of injury in the supplemental doctor's statements that he signed. Thus, we conclude that the evidence in the record is sufficient to support the Board's conclusion.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Board is AFFIRMED.